**C. Anthony Hughes SBN: 250998**
1395 Garden Hwy, Suite 150
Sacramento, CA 95833
Ph:  916.485.1111
Fax: 916.720.0255
Attorney@4851111.com

Attorney for Debtor, 6056 Sycamore Terrace, LLC

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| In re: ) | Case No. 2013-34541 |
| ) | Chapter 11 |
| **6056 SYCAMORE TERRACE, LLC** ) | Docket Control No.:  CAH-013 |
| ) | |
| ) | Date:  July 21, 2014 |
| Debtor,) | Time:  10:00 a.m. |
| ) | Place:  U.S. Bankruptcy Court. Room 28 |
| ) |        501 I Street, 7th Floor |
| ) |        Sacramento, CA |
| ) | |
| _____ ) | Judge:  Hon. Michael S. McManus |

## 6056 SYCAMORE TERRACE, LLC's
## PLAN OF REORGANIZATION DATED 5-28-2014

## <u>ARTICLE I SUMMARY</u>

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") pays creditors of **6056 Sycamore Terrace, LLC** (the "Debtor") from future income received from 4 sources: 1) rental income received from Debtor's real property located at 6056 Sycamore Terrace, Pleasanton, California (hereinafter "Property" or "Subject Property") 2) Claim against former tenant, 3) Sale of the property, and if necessary 4) The retirement account of the Managing Member (Hossein F. Bozorgzad) of Debtor. This Plan provides that general unsecured creditors will receive distributions of

greater than 10% of their claim.  This Plan also provides for the payment of administrative and secured claims (secured claim payments for 24 months then sale of Property).

## Table of Contents

ARTICLE I SUMMARY ............................................................................................... 1

ARTICLE II-CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN ............................................................................................................................ 3

ARTICLE III -TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,........................................ 4

U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS............................................................... 4

    **A.   Unclassified Claims**................................................................................. 5

    **B.   Classes of Claims and Equity Interests**................................................. 5

    **C.   Classes of Priority Unsecured Claims** ................................................. 8

    **D.   Classes of General Unsecured Claims** ................................................. 9

    **E.   Classes of Equity Interests**................................................................... 9

ARTICLE V-ALLOWANCE AND DISALLOWANCE OF CLAIMS ........................................... 10

ARTICLE VI -PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES.......... 10

ARTICLE VII -MEANS FOR IMPLEMENTATION OF THE PLAN ........................................ 11

ARTICLE VIII -GENERAL PROVISIONS.................................................................... 14

ARTICLE IX -EFFECT OF CONFIRMATION ............................................................. 15

ARTICLE IX -DISCHARGE .................................................................................... 18

6056 SYCAMORE TERRACE, LCC'S PLAN OF REORGANIZATION DATED MAY 28, 2014

**DISCLAIMER**

Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.

The court approving the Disclosure Statement is not an endorsement of the Plan.  A Scheduling Order will be served with this document which will give the deadlines for voting and objecting to the Plan and Disclosure Statement.  At any time a party in interest can request information from Attorney for the Debtor.  **The Attorney is Anthony Hughes.  He prefers email to [Anthony@4851111.com](mailto:Anthony@4851111.com) or a call to 916-224-6666** but you can also mail correspondence to 1395 Garden Hwy Ste 150, Sacramento CA 95833, or fax to 916-720-0255.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.  This Plan contains detailed information concerning the rights of creditors and holders of equity security interests.

**ARTICLE II-CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

2.01 Class 1. The claim of **JPMorgan Chase Bank, N.A.,** against the real property commonly known as **6056 Sycamore Terrace, Pleasanton, California.**

2.02 Class 2.  The allowed secured claim of **IndyMac Mortgage Services Division of OneWest Bank, FSB,** against the real property commonly known as **6056 Sycamore Terrace, Pleasanton, California.**

2.03 Class 3. The claim of **Jahan and Faran Honardoost,** against the real property commonly known as **6056 Sycamore Terrace, Pleasanton, California,** allowed under § 502 of the Code.

2.04 Class 4. The claim of **Krstyna Trzepla** to the extent allowed as secured claim under § 502 of the Code.

2.05 Class 5. The claim of **Franchise Tax Board** to the extent allowed as a

secured claim under § 502 of the Code.

2.06 <u>Class 6.</u>  All **unsecured claims** allowed under § 502 of the Code and the unsecured portions of secured not already provided for.

2.07 <u>Class 9</u>.  The **equity interests** of the individual Debtors in the property of the Estate.

**There is no Class 7 or 8.  Those classes are reserved for any claims that need to be added to the Plan if necessary through an amendment.**

**ARTICLE III <u>-TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,</u>**

<u>U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS</u>

3.01 <u>Unclassified Claims</u>.  Under section §1123(a)(1), administrative expense claims  and priority tax claims are not in classes.

3.02 <u>Administrative Expense Claims</u>.  Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03 <u>Priority Tax Claims</u>.  Provided for in table below and paid in full within 60 months of the filing of this case, unless the claim holder agrees to other treatment.

3.04 <u>United States Trustees Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date, unless the UST agrees otherwise.

3.05 <u>Summary of Estimated Amounts of Unclassified Claims:</u>
The amounts listed in this table are an estimate only.

| Type of Claim | Estimated Amount | Basis for Claim |
|---|---|---|
| Professional Fees and Expenses (subject to final fee applications and | **$15,000** *(Estimated amt.)* | Balance due to professionals of Debtor. Amount is merely a rough estimate as the amount of fees between now and |

| court approval)<br><br>Known fees and expenses in this class: Fees and expenses incurred in representing the Debtor in Possession owed to Anthony Hughes LC | | confirmation is a large variable.<br>At the time this case was filed there was $0.00 as a post-petition retainer. Estimated that the debtor will have sufficient funds to cover the difference between the post-petition retainer and the total amount due.<br><br>Under this Plan, Administrative Expenses shall be paid in full on the effective date of the Plan or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
|---|---|---|
| Other Unpaid Administrative Expenses<br><br>None anticipated | $0 | Any other unpaid administrative priority expenses, other than expenses paid in the ordinary course during the Case. |
| Cure Payments | $0 | There are no projected payments necessary to cure monetary defaults under assumed executor contracts or unexpired leases. |
| Clerk's Office Fees | $0 | |
| U.S. Trustee Fees | $0 | Debtor believes it is current on UST fees and anticipates being current through confirmation. |
| Total | **$15,000** | |

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Claims and interests shall be treated as follows under this Plan:

**A. Unclassified Claims**

    A. *Administrative Claims are listed above; Professional Fees and United States*

       *Trustee Fees.*

**B. Classes of Claims and Equity Interests**

    A. *Classes of Secured Claims*

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| Class 1<br><br>Claim holder:<br>**JPMorgan Chase Bank, N.A.**<br>P.O. Box 15298<br>Wilmington, DE 19850 | Impaired | **The Secured portion of the claim will be treated as follows**:<br><br>1st payment will commence the 1st day of the first month after the Effective Date of the confirmed Plan and be paid |

| | | |
|---|---|---|
| First Deed of Trust on rental property:<br>*6056 Sycamore Terrace*<br>*Pleasanton, CA 94566*<br>6 bedroom<br>7.5 baths<br>Monthly rental rate per current executed 24 month lease with high income creditworthy tenant:<br>$8,900.00<br><br>Claim: $2,250,700.10*<br>Value of collateral:<br>$1,920,000.00**<br><br>* Proof of claim No. 2<br><br>**<br>*Debtor and Chase stipulated to the underlying property value of $1,920,000.00. Order granting Stipulation approved on 4/1/14 (Doc No. 112)* | | accordingly each month thereafter for the terms as set below.<br><br>Month 1-24<br>Interest Only (payment based on 5% interest per annum of $1,920,000)<br>Monthly payment: **$8,000.00**<br>Interest rate per annum: **5.00%**<br><br>The property taxes, insurance, and other expenses of the property will be paid direct by Debtor.<br><br>**The Entire lien shall be paid on or before the 24th month of the Plan.**<br><br>Debtor shall sell the Subject property on or before the 24th month of the Plan.<br>Claimant shall retain the lien until the total claim amount of $2,250,700.10 is paid.<br>Okay |
| Class 2<br>Secured Claim of:<br>**IndyMac Mortgage Services, Division of OneWest Bank, FSB**<br>P.O. Box 78826<br>Phoenix, AZ 85062<br><br>Second Deed of Trust on rental property:<br>*6056 Sycamore Terrace*<br>*Pleasanton, CA 94566*<br><br>Estimated Claim: $250,000.00<br>Allowed secured claim under 11 USC 506(a): $0.00*<br><br>(Claimant has not filed a claim) | Impaired | As the Class 2 Claimant has a senior lien in excess of the value of the collateral, the Class 2 Claimant is completely under-secured.<br>(Motion to Value Granted per Minute Order Docket item 133 on 5-12-2014)<br><br>As such, this claimant is provided for as a member of the General Unsecured Class (**Class 6**). Lien and Secured Claim is satisfied upon confirmation of the Plan.<br><br>In the event of a default, this Claimant may exercise all of its remedies available under applicable state law. Likewise, Debtors maintain all rights and protections of California Law. |

| | | |
|---|---|---|
| Because the value of the property is less than the amount of the claim by the senior creditor, the Class 2 claim will be wholly unsecured. | | |
| Class 3<br><br>**Jahan and Faran Honardoost**<br>355 First Street, Unit # S1603<br>San Francisco, CA 94105<br><br>Third Deed of Trust on rental property:<br>*6056 Sycamore Terrace Pleasanton, CA 94566*<br><br>Estimated Claim: $200,000.00<br>Allowed secured claim under 11 USC 506(a): $0.00*<br><br>(Claimant has not filed a claim)<br><br><br>Because the value of the property is less than the amount of the claim by the senior creditor, the Class 3 claim will be wholly unsecure | Impaired (Votes as Class 6) | By Plan confirmation, Debtor will have As the Class 2 Claimant has a senior lien in excess of the value of the collateral, the Class 2 Claimant is completely under-secured.<br>(Motion to Value Granted per Minute Order Docket item 134 on 5-12-2014)<br><br>As such, this claimant is provided for as a member of the General Unsecured Class (**Class 6**).  Lien and Secured Claim is satisfied upon confirmation of the Plan.<br><br>In the event of a default, this Claimant may exercise all of its remedies available under applicable state law. Likewise, Debtors maintain all rights and protections of California Law. |
| Class 4<br><br>**Krystyna Trzepla**<br>702 Sawyer Court<br>Roseville, CA 95747<br><br>UCC Finance lien against:<br>*Fixtures located at 6056 Sycamore Terrace, Pleasanton, CA 94566. Fixtures includes dining table set, exercise equipment, office furniture and* | Impaired | This claim will be bifurcated into a secured and unsecured portion.  The unsecured portion of the claim ($2,500) will participate in this plan as a **Class 6** General unsecured claim.<br>**The Secured portion of the claim will be treated as follows**:<br><br>1st payment will commence the 1st day of the first month after the effective date of the confirmed plan and be paid accordingly each month thereafter for |

| | | |
|---|---|---|
| *lighting fixtures, (Doc # 39648180002)*<br><br>Claim: $7,500.00<br>Est. Value of Collateral: $5,000.00<br><br>(Claimant has not filed a claim) | | the terms as set below.<br><br>Months 1-24<br>Monthly Payment: **$141.53**<br>Interest rate: **5%**<br><br>Remainder of unpaid principal and interest shall be paid in month 24 of the Plan through the sale of the real property.<br><br>Claimant shall retain lien until payment in full of the accrued interest and principal owed under this Plan on the secured portion of the claim. |

**C.  Classes of Priority Unsecured Claims**

| | | |
|---|---|---|
| <u>Class 5</u><br><br>**Franchise Tax Board**<br>Bankruptcy Section<br>P.O. Box 2952 MSA – 340<br>Sacramento, CA 95812<br><br>Priority Claim Amount: $2071.48 per proof of claim number 3 filed 2-14-2014. (General Unsecured amount $424.71 provided for in the General Unsecured Class) | Impaired | This claim is treated in a manner consistent with 11 U.S.C. 507 Section (a)(8) and 11 U.S.C. 1129 Section (a)(9)(C).<br><br>Debtor shall pay full claim as follows:<br><br>Monthly payment: **$177.00**<br>Interest Rate per Annum: **4%**<br>Term: **1-12 months** or until the claim is paid in full, whichever occurs first.<br><br>1st payment will commence the 1st day of the first month after the effective date of the confirmed plan.<br><br>In the event of a default, this Claimant may exercise all of its remedies available under applicable state or federal law. |

6056 SYCAMORE TERRACE, LCC'S PLAN OF REORGANIZATION DATED MAY 28, 2014

**D.  Classes of General Unsecured Claims**

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| Class 6<br><br>**General Unsecured Claims**<br>**Breakdown of Claims in this**<br>**Class:**<br><br>**Claim from Class 2: IndyMac**<br>**Mortgage Services, A Division**<br>**of OneWest Bank, FSB**<br>**(disputed)**<br>$250,000.00<br><br>**Claim from Class 3: Jahan and**<br>**Faran Honardoost (disputed)**<br>$200,000.00<br><br>**Claim from Class 4: Krystyna**<br>**Trpzepla**<br>$2,500.00<br><br>Franchise Tax Board non-priority amount per POC #3<br>$424.71<br><br>**Total: $452,924.71**<br>**# of claims: 4**<br><br>**This Class is being paid an**<br>**estimated excess of 10% of**<br>**their claim amount.** | Impaired | Debtor shall pay **$45,300** to this class to be distributed to claim holders in this class on a pro rata basis**.**<br><br>1st payment will commence the first calendar year quarter after the effective date of the confirmed plan and thereafter each quarter.<br>Each quarterly payment shall be a minimum of $1,000.00.  The remainder of the amount to be distributed to this Class shall be distributed through escrow from the sale of the Subject Property.<br><br>This payment to the general unsecured class is far in excess of what the claim holders would receive in a hypothetical chapter 7.<br><br>Payment to this class is not contingent on collection of the claim against the former tenant who breached the former lease contract which means that the creditors get the benefit of getting more than a hypothetical chapter 7 liquidation if the claim is collectable, and if the claim is not collectable then this class still gets $45,300 which is $45,300 greater than the liquidation value of the estate. |
| Class 7-8<br><br>Intentionally omitted and reserved for adding a Class if necessary. | | |

**E.  Classes of Equity Interests**

| Class 9<br>Equity Interest Holders of the Debtor in the Property of the | Impaired | Current Equity Interest Holders of the Debtor shall retain their full interests in the equity that they hold. |

| Estate | | |
|---|---|---|

## ARTICLE V-ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02 Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final order.

5.03 Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5.04 **Deadline to file an application to approve an <u>Administrative Claim</u>** is **45 days** from the effective date of Plan Confirmation.

5.05 If a motion to an administrative claim is filed within the deadline but the motion is denied then the deadline of that administrative claim shall be extended 14 days after the Order denying the Application.

5.06 **<u>Deadline to file an objection to a claim</u> is 45 days** from the effective date of Plan Confirmation.  If the effective date of the Plan lands before the deadline to file a claim, then the deadline to file an objection to the claim shall be the later of 30 days after the deadline to file claims or 45 days after the effective date of Plan Confirmation.

## ARTICLE VI -PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 <u>Assumed Executory Contracts and Unexpired Leases.</u>

(a) Debtor is not currently in any executor contracts and unexpired leases are listed in Schedule G. Under this plan:

**No executory contracts / unexpired leases are assumed.**

The Debtor specifically <u>rejects</u> the following contract and unexpired leases:

**No leases or contracts are rejected.**

(b) The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon effective date of this Plan. A proof of a claim arising from the rejection of an executor contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.


**ARTICLE VII -MEANS FOR IMPLEMENTATION OF THE PLAN**

7.01 <u>Pursuant to §1123(a)(5) of the Code</u>. The Debtor will, upon the confirmation of this Plan, complete the following steps as means for the successful execution of this plan:

1. Source of Payments

Payments and distributions under the Plan will be funded by the following:

   a. Managing member for Debtor will continue to lease the Property to maximize the potential rent over the course of the Plan.

2. Under this Plan, Equity holders of the Debtor shall retain their full interests in the equity they hold all property of the estate.

3. Administrative Claims, including attorney fees and trustee fees shall be paid upon confirmation of this Plan. Managing Member of Debtor has committed to pay this from his own retirement in the event that funds held by debtor upon confirmation are insufficient.

4. Feasibility of Plan Payments:

a. The property has been leased to Mr. & Mrs. Woodly on a 2 year lease for $8,900.00 per month.

b. Property taxes, insurance, gardening service, home warranty, and pool service are to be paid by Debtor under the lease.

c. Electricity, gas, water and sewer are to be paid by the tenant under the lease.

d. The tenant will not default on the lease because he is a NFL football player who was just traded from the Pittsburg Steelers to the Oakland Raiders on a $6M per year contract with two years minimum guarantee. And if he were to default, he is highly collectable so that a new tenant could be found and a judgment could be obtained for any deficiency.

e. The Managing Member of the Debtor has committed to cover any deficiency in the monthly payments under the Plan. He is able to do so from $75K liquid funds in his Roth IRA retirement account.

f. As listed in Schedule B of the Schedules filed with the Court, Debtor has a **claim for breach of contract against the former tenant** of the property (Schedule B item 16). The claim is listed as $178,000. At the present time it is Debtor's opinion that he can collect $30,000 for the Bankruptcy Estate after costs and fees of collection. These funds will act as a buffer for expenses of the property pending its sale, at which time the General unsecured class will receive more than they would have received in a hypothetical chapter 7 liquidation.

5. Sale of Property under the Plan

a. As it has been evident by the conflicting appraisals received by the court, there is a major discrepancy on the measured square footage of the house and the recorded square footage in the county records. The

value of this property can increase substantially if the county record can reflect the measured square footage.

This is can be a very time consuming and expensive ($20K to $30K) process. However, the debtor's managing member, being an experienced developer, and a licensed real estate professional not only has the knowledge to see this process through, he has also expressed willingness to commit his time and funds to make this happen.  In addition to over $240K rental income debtor will collect over the course of this plan, debtor managing member currently has over $200K in his personal Roth IRA account, and is willing to use these funds to financially support this plan if necessary. Over the past seven months debtor's managing member has demonstrated this commitment and willingness of support by managing and maintaining the property. This has been both in time, over 14 trips down to the property located in Bay Area from place of his residence in Auburn, and in money by gifting over $5K to effect various repairs personally or through contractors, cleaning, utilities, pool and grounds maintenance.

b. Here is the detail of the process to be able to sell the property for the projected value:

    i. An architect needs to be hired to measure and validate the living space according to definition of California Building code.

    ii. This measurement needs to be submitted to the City of Pleasanton Building Department for review and acceptance.

    iii. Building Department's finding has to be submitted to Planning Department for approval.

    iv. Any additional fees assessed needs to be paid.

v.   This information needs to be submitted to the County
     Assessor's office for review and acceptance.

vi.  The square footage in the public records will be updated and
     new property taxes will be assessed.

### ARTICLE VIII -GENERAL PROVISIONS

8.01 Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.02 Effective Date of Plan. The Effective Date of this Plan is the fourteenth day following the date of the entry of the final order of confirmation. But if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX -EFFECT OF CONFIRMATION

9.01  Vesting of Property.  On the Effective Date, all property of the estate will vest in the reorganized debtor pursuant to § 1141(b), free and clear of all claims and interests except as provided in the Plan.

9.02 Plan Creates New Obligations.  Except as otherwise stated in the Plan, the payments promised in the Plan constitute new contractual obligations that replace those obligations to creditors that existed prior to the Effective Date.

9.03 Creditor Action Restrained.  Creditors may not take any action to enforce either pre-confirmation obligations or obligations due under the Plan, so long as the Debtor is not in material default under the Plan. If the Debtor is in material default under the Plan, affected creditors may: (i) take any action permitted under non-bankruptcy law to enforce the terms of the Plan; or (ii) move to dismiss this case or to convert this case to a chapter 7 bankruptcy case.

9.04 Material Default Defined.  If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 15 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default.  If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

9.04(a) Material Default for Federal Tax Claims Defined.  If debtor fails to make any installments payment required under this plan as to Federal taxes within 30 days after the due date of such installment, or if the debtor fails to make any deposit or payment of any currently accruing employment tax liability within 10 days of the due date of such deposit or payment, or if the debtor fails to file any required Federal tax return by the due

date due of such return, then the District Director or his delegate may declare the debtor in default of this plan.

If the District Director declares the debtor to be in default of this plan and the debtor fails to cure the default within 30 days of written notification, then the entire unpaid liability under the confirmed plan, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the debtor.

If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code or by any other procedure authorized by law.

9.05 Remedies Upon Material Default.  Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

9.06 Retention of Jurisdiction.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Case or the Plan.

9.07 Post-confirmation Attorney and Professional Fees.  Prior to the court issuing an order of  final decree, the Attorney will prepare and file with the Court for approval a Final Fee Application for Allowance and Payment of Fees and Reimbursement of Costs of Attorney For Debtors in Possession pursuant to 11 U.S.C. § 330 ("Application"). The Application will include all Fees up to the date of Plan Confirmation. Thereafter, the debtor's estate will be billed for fees in relation to post-confirmation chapter 11 administration. These fees include but are not limited to assisting client with plan compliance, further communication with creditors, modifying the Plan, and general case administration.

9.08 Post-confirmation United States Trustee Quarterly Fees. A quarterly fee shall be paid by (name of reorganized debtor) to the United States Trustee, for deposit into the Treasury, for each quarter (including any fraction thereof) until the case is converted, dismissed, or closed by the entry of a final decree pursuant to 28 U.S.C. § 1930(a)(6).

9.08(a) Chapter 11 Post-confirmation Reports and Final Decree.

(a) Post-confirmation Reports: At the end of each calendar quarter prior to final decree, Debtor shall file with the Court a post-confirmation status report, the purpose of which is to explain the progress made toward full administration of the confirmed plan of reorganization. The first Report shall be filed for the portion of the calendar quarter from the date of confirmation to the end of the quarter. Subsequent reports shall be filed at the expiration of each calendar quarter thereafter until dismissal, conversion, or entry of a final decree closing the case. Reports shall be filed with the Court and served upon the United States Trustee not later than twenty (20) days after the expiration of the reported quarter.

The Report shall include a statement of receipts and disbursements, with the ending cash balance, for the entire 90-day period. The report shall also include information sufficiently comprehensive to enable the court to determine: (a) whether the order confirming the plan has become final; (2) whether deposits, if any, required by the plan have been distributed; (3) whether any property proposed by the plan to be transferred has been transferred; (4) whether {name of reorganized debtor} under the plan has assumed the business or the management of the property dealt with by the plan; (5) whether payments under the plan have commenced; (6) whether accrued fees due to the United States Trustee under 28 U.S.C. §1930(a)(6) have been paid; and (7) whether all motions, contested matters and adversary proceedings have been finally resolved.

(b) Service of Reports: A copy of each report shall be served upon the United States Trustee and other persons or entities as have requested service of such reports in writing with the Court, no later than the day upon which it is filed with the Court.

(c) Final Decree: After the estate is fully administered Debtor shall file an application for final decree, and shall serve the application on the United States Trustee, together with a

proposed final decree. The United States Trustee shall have twenty (20) days within which to object or otherwise comment upon the Court's entry of the final decree.

## ARTICLE IX - DISCHARGE

10.01 Discharge. Confirmation of this Plan acts to discharge Debtor from all its previous liabilities in favor of the liabilities imposed in this Plan.

Respectfully submitted,

Dated: 5-28-2014                                      /s/ C. Anthony Hughes
                                                      **C. Anthony Hughes**
                                                      Attorney for the Plan Proponent

Dated:  5-28-2014                                     /s/ Hossein F. Bozorgzad
                                                       Hossein F. Bozorgzad
                                                      Managing Member of Debtor

_____18_____